UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARYBETH BRONSON,

        Plaintiff,

v.                                                                                Case No:   6:22-cv-2078-RBD-LHP

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant

---

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

Marybeth Bronson ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits.  Claimant raises one assignment of error regarding the Commissioner's final decision, and based on her arguments, requests that the matter be remanded for further administrative proceedings.  Doc. No. 18.  The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed.  Doc. No. 19.  For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the

Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY.

On November 18, 2020, Claimant filed an application for disability insurance benefits, alleging that she became disabled on May 31, 2019.  R. 16, 196.[1]  Her claim was denied initially and on reconsideration, and Claimant requested a hearing before an ALJ.  R. 106, 120, 124.  A hearing was held before the ALJ on January 20, 2022, at which Claimant appeared with a non-attorney representative.  R. 35–70.  Claimant, a vocational expert ("VE"), and a medical expert ("ME") testified at the hearing.  *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.  R. 16–29.  Claimant sought review of the ALJ's decision by the Appeals Council.  R. 195.  On September 16, 2022, the Appeals Council denied the request for review.  R. 1–7.  Claimant now seeks review of the final decision of the Commissioner by this Court.  Doc. No. 1.

---

[1] The "Application Summary for Disability Insurance Benefits" states that Claimant applied for benefits on December 10, 2020, but according to the ALJ's decision, Claimant filed the application on November 18, 2020.  *Compare* R. 16, *with* R. 196.  For consistency, and because the application date is not dispositive of this appeal (as under either date the same set of regulations applies), the Court utilizes the application date stated by the ALJ: November 18, 2020.

## II.   THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).  R. 16–29.[3]  The ALJ first found that Claimant meets the insured status requirements of the Social Security Act through December 31, 2024.  R. 18.  The ALJ also concluded that Claimant had not engaged in substantial gainful activity since May 31, 2019, the alleged disability onset date.  R. 19.  The ALJ also found that Claimant suffered from the following severe impairments:  Bronchial Asthma and Morbid Obesity.  *Id.*[4]  The ALJ determined that Claimant did not have an impairment or

---

[2] Upon a review of the record, the undersigned finds that counsel for the parties have adequately stated the pertinent facts of record in their briefing.  Doc. Nos. 18–19.  Accordingly, the undersigned adopts those facts reference and only restates them herein as relevant to considering the issue raised by Claimant.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[4] The ALJ concluded that Claimant's impairments of Hashimoto's Disease and anxiety were non-severe.  R. 19–20.

combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 21.

After careful consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[5] except:

> [S]he can occasionally lift and carry 20 pounds and can frequently lift and carry 10 pounds or less.  She can stand and walk for up to 6 hours in an 8-hour day with usual breaks and can sit for up to 6 hours in an 8-hour day with usual breaks.  The claimant can perform all postural activities on a frequent basis, with the exception of never climbing ladders, ropes, or scaffolds.  She must avoid all exposure to respiratory irritants as well as extremes of heat and cold.  She must avoid all exposure to heights as well as to dangerous moving machinery.

R. 21–22.  Based on this assessment, the ALJ found that Claimant was capable of performing past relevant work as a customer service representative, as actually performed or as generally performed, and as a waitress, as that work is generally

---

[5] The social security regulations define light work to include:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

performed, finding that these jobs did not require the performance of work-related activities precluded by Claimant's RFC.  R. 28.  Accordingly, the ALJ concluded that Claimant was not under a disability, as defined in the Social Security Act, from the May 31, 2019 alleged disability onset date through the date of the decision.  R. 29.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv) (a claimant will be found not disabled if he can return to his past relevant work.).

## III.   STANDARD OF REVIEW.

The Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d

1553, 1560 (11th Cir. 1995) (per curiam).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.   ANALYSIS.**

Claimant raises one assignment of error in this appeal:  the ALJ failed to properly assess the opinions and records from Claimant's treating physician German Castro, M.D., and failed to apply the proper legal standards to Dr. Castro's opinions.  Doc. No. 18.[6]  Accordingly, this is the only issue the undersigned will address.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c, 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a(4))(i)–(v)).  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440 (citing 20 CFR § 404.1545(a)).  In determining a claimant's

---

[6] The Commissioner has responded in opposition.  Doc. No. 19.  The undersigned notes that pursuant to Rule 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), Plaintiff was permitted to file a reply brief, but she did not.

RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.  20 C.F.R. § 404.1545(a)(3).

Claimant filed her application for disability insurance benefits on November 18, 2020.  R. 16, 196.  Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.  We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.  When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[7]  The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).  We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).  The regulations further state that because supportability and consistency are the most important factors under consideration, the

---

[7] Subparagraph (c) provides that the factors to be considered include:  (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(c).

Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." *Id.* § 404.1520c(b)(2).[8]

Here, the administrative transcript includes several medical records from Dr. Castro, including treatment records from 2014 through 2021. *See* R. 318–40 (Exhibit 2F), R. 352–62 (Exhibit 4F), R. 516–46 (Exhibit 11F). As it relates to the issues raised in this appeal, on October 9, 2018, Dr. Castro completed a certification regarding Claimant's request for leave under the Family and Medical Leave Act ("FMLA"), based upon his treatment of Claimant on September 24, 2018 and October 1, 2018. R. 331–33 ("First FMLA Form").[9] Among other things, Dr. Castro wrote that Claimant's condition commenced on September 21, 2018, was expected to last approximately two years, Claimant required treatment visits at least twice per year, and that medication was prescribed. R. 331. Dr. Castro further wrote that Claimant would be unable to perform job functions due to her condition, such that Claimant "cannot talk when she is sick." *Id.* Dr. Castro also stated that Claimant

---

[8] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

[9] The record further contains progress notes from Dr. Castro from September 24, 2019, and October 1, 2018. R. 339, 340.

would be incapacitated for the continuous period of September 21, 2018 to October 10, 2018. R. 332. Dr. Castro opined that Claimant could not perform even part time work, and noted that Claimant would periodically experience episodic flareups preventing her from performing job functions, resulting in it being medically necessary for her to be absent from work, and that Claimant would experience flareups one time every three months, for three days per episode. *Id.*

On May 25, 2019, Dr. Castro completed another FMLA certification, based upon his treatment of Claimant on September 24, 2018, October 1, 2018, and May 25, 2019. R. 523–25 ("Second FMLA Form"). [10] Dr. Castro again wrote that Claimant was prescribed medication, and that she would be unable to perform certain job functions due to her condition, to wit, Claimant "cannot talk when she is sick." R. 523. Dr. Castro estimated that Claimant's condition would last approximately three years, she would be continuously incapacitated from May 25, 2019 through June 17, 2019, and she could not perform even part time work. R. 523–24. Dr. Castro stated that Claimant would periodically experience episodic flareups preventing her from performing job functions, resulting in it being medically necessary for her to be absent from work, and that Claimant would

---

[10] The record contains progress notes from Dr. Castro from May 25, 2019. R. 354.

experience flareups one time every three months, for three days per episode.  R. 524.[11]

> In the decision, the ALJ states only as follows regarding Dr. Castro:
>
> The undersigned notes that the record contains an opinion from German Castro, M.D., which was written in October 2018 (Ex. 2F/17-19).  The undersigned also notes that this opinion was written more than 6 months before the alleged onset date, and as such, Dr. Castro did not consider any evidence made after October 2018 or during the adjudicatory period, including hearing testimony, nor does the record indicate that Dr. Castro had the opportunity to reevaluate, modify, or update his opinion statement after reviewing more current evidence.  Accordingly, the statements made by Dr. Castro in this opinion statement have not been considered or evaluated for persuasiveness.

R. 28.   Neither the medical records from Dr. Castro's office nor the Second FMLA Form are otherwise mentioned in the decision.  *See id.*

In her brief, Claimant argues that the ALJ erred in stating that Dr. Castro did not consider evidence regarding her medical condition after October 2018 given the Second FMLA Form, incorrectly concluded that Dr. Castro did not "reevaluate, modify, or update his opinion statement after reviewing more current evidence" based upon same, and erred in failing to consider post-October 2018 treatment records from Dr. Castro.  Doc. No. 18, at 8–11.  In sum, Claimant argues that the ALJ erred in failing to conduct a supportability/consistency analysis of the First

---

[11] The administrative record also contains two other FMLA forms from 2016.  R. 529–36, 540–43.  However, Claimant does not rely on or discuss those 2016 FMLA forms, and so the undersigned does not further address them herein.
- 10 -

FMLA Form, and that the ALJ's analysis of same was flawed because the ALJ was apparently unaware of the Second FMLA Form or medical evidence from Dr. Castro post-dating October 2018, and thus also reversibly erred in failing to consider that evidence.  *Id.*

In response, the Commissioner first argues that because the ALJ relied on three other medical opinions of record to find that Claimant was capable of performing a range of light work (Arthur Wells, M.D., Tara Reynolds, M.D., and Mark O. Farber, M.D.), the Court should affirm because substantial evidence supports the ALJ's decision.  Doc. No. 19, at 4–5.  Otherwise, the Commissioner contends that the ALJ was not required to consider the Second FMLA Form because it does not contain a medical opinion, as it does not "include any assessment of what [Claimant] was able to do," "refer to any impairment-related limitations or restrictions in [Claimant's] abilities to perform work activities," or include any "discussion of any specific functional limitations or restrictions in actual work activities based on her conditions."  *Id.* at 5–6.  Finally, even if the Court found the Second FMLA Form to contain a medical opinion, the Commissioner argues that the ALJ's failure to consider it was harmless because (1) the ALJ considered the three other physician opinions that Claimant could perform a range of light work; and (2) the ALJ considered the First FMLA Form as irrelevant, and the same analysis applies to the Second FMLA Form because it was submitted prior to Claimant's

alleged disability onset date and predates the state agency expert opinions by over two years.  *Id.* at 6–7.

Upon review, the undersigned cannot agree with the Commissioner's contentions.  As an initial matter, the ALJ himself found the First FMLA Form was a medical opinion.  *See* R. 28 ("The undersigned notes that the record contains an opinion from German Castro, M.D., which was written in October 2018" (citing Exhibit 2F, at 17–19)).  And the Second FMLA Form contains substantially the same information.  *See* R. 523–25.  Contrary to the Commissioner's argument, the FMLA forms also appear to contain functional limitations, such that Dr. Castro opines that Claimant "cannot talk when she is sick."  *See* R. 331, 523.  *See also* 20 C.F.R. § 404.1513(a)(2);[12] *Mitchell v. Comm'r of Soc. Sec. Admin.*, No. 2:16-cv-3675-

---

[12] Under the new regulations, a "medical opinion" is defined as follows:

A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . .

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

TMC-MGB, 2018 WL 704367, at *10 (D.S.C. Jan. 17, 2018), *report and recommendation adopted*, 2018 WL 689753 (D.S.C. Feb. 1, 2018) (finding reversible error where the ALJ did not consider a medical opinion related to a vocal cord impairment, and its effects on the claimant's ability to communicate). Dr. Castro also opines on Claimant's absenteeism from work. *See* R. 332 (opining that flareups would prevent Claimant from performing job functions and it would be medically necessary for Claimant to be absent from work during flareups, and that Claimant would experience flareups one time every three months, for three days per episode); R. 524 (same). *See also McCrea v. Kijakazi*, No. 8:21-cv-2160-VMC-AEP, 2023 WL 2482628, at *5 (M.D. Fla. Feb. 24, 2023), *report and recommendation adopted*, 2023 WL 2477613 (M.D. Fla. Mar. 13, 2023) (finding a recitation that the claimant's impairments or treatments would cause the claimant to be absent from work more than twice a month "is clearly an impairment-related limitation or restriction because an assessment of absenteeism describes the extent to which Plaintiff can perform a work-related function: attendance").

The Commissioner does not address nor defend the ALJ's analysis with

---

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

regard to the First FMLA Form besides appearing to argue that the ALJ properly rejected it as irrelevant as completed prior to the alleged disability onset date. *See* Doc. No. 19, at 7. The Commissioner cites no legal authority supporting this argument, and the undersigned has located no legal authority from the Eleventh Circuit stating that the ALJ can forego the supportability/consistency analysis merely because the records predate the alleged disability onset date. *Cf. Nichols v. Comm'r of Soc. Sec.*, No. 6:16-cv-1819-Orl-DCI, 2018 WL 746940, at *3 (M.D. Fla. Feb. 7, 2018) (noting, under prior regulations, that "even when an opinion significantly predates a claimant's alleged onset date such that the opinion is of limited relevance, courts in this Circuit have required the ALJ to weigh the opinion"). *See also Willie W. v. Comm'r of Soc. Sec.*, No. 4:21-cv-00495-BLW-REP, 2023 WL 2563865, at *7–8 (D. Idaho Mar. 2, 2023), *report and recommendation adopted*, 2023 WL 2561368 (D. Idaho Mar. 17, 2023) (finding reversible error in ALJ's rejection of medical opinion as predating the disability onset date for failure to adequately consider the supportability/consistency of the opinion).

Moreover, as Claimant argues, the bases on which the ALJ relied in disregarding the First FMLA Form are unsupported by the record. Specifically, the ALJ stated that "Dr. Castro did not consider any evidence made after October 2018 or during the adjudicatory period, including hearing testimony, nor does the record indicate that Dr. Castro had the opportunity to reevaluate, modify, or update

his opinion statement after reviewing more current evidence." *See* R. 28.  This is simply inaccurate, as the record contains the Second FMLA Form, as well as treatment records from Dr. Castro after October 2018, none of which are mentioned or cited in the decision.  *See* R. 318–40 (Exhibit 2F), R. 352–62 (Exhibit 4F), R. 515–46 (Exhibit 11F).  Thus, the ALJ's finding regarding the First FMLA Form is not supported by substantial evidence.

Given that the ALJ found that the First FMLA Form contained opinions from Dr. Castro, that the Second FMLA Form addresses the same functional limitations, and that the ALJ failed to address the Second FMLA Form or the records from Dr. Castro after October 2018 and affirmatively misstated the contents of the record with regard to the First FMLA Form, the undersigned finds that the ALJ erred.  *See, e.g.*, *McCrea*, 2023 WL 2482628, at *5, *report and recommendation adopted*, 2023 WL 2477613 (M.D. Fla. Mar. 13, 2023) (finding reversible error in the ALJ's failure to consider a medical opinion regarding the claimant's absenteeism from work under the new SSA regulations); *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (finding reversible error where the ALJ failed to "articulate the persuasiveness of all medical opinions in the case record" under the new SSA regulations).[13]

---

[13] The undersigned notes that the FMLA forms are relatively conclusory and that the forms include opinions on issues reserved to the Commissioner.  *See* R. 331–33, 523–25.  And the ME opined at the hearing that the First FMLA Form is not consistent with the

The question, then, is whether the ALJ's errors were harmless, as the Commissioner argues. *See Perez v. Comm'r of Soc. Sec.*, No. 6:20-cv-1341-LHP, 2022 WL 479813, at *6 (M.D. Fla. Feb. 16, 2022) (collecting cases for harmless error application to the ALJ's failure to properly consider medical opinions under the new regulations). The Commissioner argues that any error in the ALJ's decision was harmless for two reasons: first, because were three other medical opinions of record providing substantial evidence for the ALJ's decision;[14] and second, because the ALJ found the First FMLA Form irrelevant as predating the alleged disability

---

objective evidence of record. *See* R. 63–64. However, the ALJ did not reject Dr. Castro's opinions on these bases, and indeed did not address the Second FMLA Form at all. R. 28. Nor does the Commissioner argue these bases in her briefing. Doc. No. 19. Thus, the Court should not rely on them here. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104–05 (11th Cir. 2021) ("It is the responsibility of the agency, not the reviewing court, to supply the justification for its decision. . . ." (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981))).

[14] The Commissioner also appears to argue that there was no error at all on this basis. Doc. No. 19, at 4–5. However, the Commissioner cites no legal authority (and the undersigned has located none) supporting that proposition. *See* Doc. No. 19, at 4–5. *Cf. Freeman v. Comm'r of Soc. Sec.*, No. 6:19-cv-2172-EJK, 2021 WL 665976, at *2 (M.D. Fla. Feb. 19, 2021) (citations omitted) (stating, under the prior regulations, "Where an ALJ has failed to assign weight to a treating physician's opinion, reviewing courts have been 'unconvinced' that substantial evidence (in the form of opinions of medical doctors, benign medical findings, and Plaintiff's own statements), support the ALJ's findings because it 'presupposes' the ALJ rejected a treating physician's opinions based on that same specific evidence without stating why the ALJ rejected the treater's opinions."). The only case the Commissioner cites is *Biestek v. Berryhill*, 139 S. Ct. 1148, 1156 (2019) for the general standards on substantial evidence, which case does not address the ALJ's failure to consider a medical opinion. *See* Doc. No. 19, at 4–5.

onset date, the Second FMLA Form is irrelevant for the same reasons.  Doc. No. 19, at 6–7.

Upon consideration, the undersigned does not find the ALJ's errors harmless, as the functional limitations at issue could be viewed as inconsistent with the RFC determination, and the undersigned "cannot say that the failure to address [the Second FMLA form or properly address the First FMLA form] was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ."  *See Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006).  *See also McCrea*, 2023 WL 2482628, at *6, *report and recommendation adopted*, 2023 WL 2477613 (M.D. Fla. Mar. 13, 2023) (failure to consider medical opinion under the new regulations could not be harmless where the opinion regarding absenteeism could conflict with the RFC); *Carson v. Comm'r of Soc. Sec.*, No. 6:21-cv-20-DCI, 2022 WL 294719, at *2 (M.D. Fla. Feb. 1, 2022) (applying harmless error analysis under new regulations to an ALJ's error in failing to mention or consider medical opinions, an error which the Court concluded was not harmless where it could have impacted the RFC determination).[15]

---

[15] The undersigned also notes that, although Claimant does not point this out, the ALJ concluded that Claimant could perform past relevant work as a customer service representative (Dictionary of Occupational Titles ("DOT") #249.362-026) and waitress (DOT #311.477-030).  R. 28.  As set forth in the DOT, the ability to speak is an essential part of these occupations.  *See* DOT 249.362-026 Order Clerk, *available at* 1991 WL 672320 (requiring "significant" speaking, and the ability to "[s]peak before an audience with poise, voice control, and confidence, using correct English and a well-modulated voice.");

To be sure, the Commissioner cites no legal authority demonstrating that failure to wholly consider a medical opinion is harmless where there are other medical opinions of record on which the ALJ relied. Doc. No. 19, at 6–7.[16] Nor does the Commissioner cite any legal authority demonstrating that any error is harmless because the same reasons for rejecting the Second FMLA Form exist based on the reasons given by the ALJ for rejecting the First FMLA Form. Doc. No. 19, at 6–7.[17] Given that it is the duty of the ALJ, and not this Court, to make that determination, and that, as discussed above, the ALJ's decision regarding the First

---

DOT 311.477-030 Waiter/waitress, Informal, *available at* 1991 WL 672688 (requiring the ability to "[s]peak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses."). This would appear to conflict with Dr. Castro's statement that Claimant "cannot talk." *See* R. 331, 523.

The undersigned notes that although the VE and the ALJ state that DOT 249.362-026 is a "customer service representative," the DOT provides the title "order clerk." Because Claimant does not raise that discrepancy as an issue on appeal, the undersigned does not address it further.

[16] The Commissioner cites *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983), and *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989), for this proposition, neither of which address this argument/issue. *Diorio* concerned harmless error in the ALJ's factual misstatements regarding the claimant's age and past work, where those statements were irrelevant to the ultimate decision. 721 F.2d at 728. *Anderson* concerned whether there was error in the magistrate judge making findings regarding the claimant's daily activities that were not cited by the ALJ. 887 F.2d at 634.

[17] The Commissioner cites two cases for the general standards regarding harmless error—neither of which addresses the Commissioner's precise argument. *See* Doc. No. 19, at 7 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (recognizing that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (To establish prejudice, a claimant must show that an ALJ's error "might have altered the result")).

FMLA Form is unsupported by substantial evidence, the Commissioner's harmless error argument is unpersuasive. *Cf. Benson v. Colvin*, No. 2:15-CV-0652-CLS, 2016 WL 159323, at *2 (N.D. Ala. Jan. 14, 2016) (rejecting argument that failure to address medical opinion was harmless where the Commissioner argued that the opinion was conclusory and unsupported by the record because any "conflicts should be weighed and resolved in the first instance by the ALJ, not by this court").[18]  In essence, the Commissioner is attempting to provide post hoc rationalization for the ALJ's conclusions, which is impermissible. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (the court's limited review does not permit "deciding the facts anew, making credibility determinations, or re-weighing the evidence"); *McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases.").

For these reasons, the undersigned will respectfully recommend that this matter be reversed and remanded for further administrative proceedings.

---

[18] The undersigned notes that the Second FMLA Form was completed on May 25, 2019, a mere six (6) days before the alleged disability onset date of May 31, 2019. *See* R. 19, 523–25. And notably, on the Second FMLA Form, Dr. Castro opines that Claimant's condition would last approximately three years, and she would be continuously incapacitated from May 25, 2019 through June 17, 2019, which includes dates after the alleged disability onset date. *See* R. 523–24.

## V.     RECOMMENDATION.

Upon consideration of the foregoing, it is **RESPECTFULLY RECOMMENDED** that the Commissioner's final decision be **REVERSED and REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and that the Clerk of Court be **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner, and thereafter, to **CLOSE** the case.

### NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 8, 2023.

*[signature]*

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record